Thank you both for your excellent arguments. The next case on the argument calendar is Collins v. the Commissioner of Social Security. And this case is set also for 10 minutes per side, so we'll hear first from Appellant. And Mr. Goddard, since you've got 10 minutes scheduled, if you'd like to make a rebuttal argument, please try to save some time for that. Thank you, Your Honor. May it please the Court, Jordan Goddard appearing on behalf of Appellant Adrienne Collins. I will do my best to reserve two minutes for my rebuttal. Ms. Collins has never been able to sustain full-time work due to her long-standing mental health issues. As a result, she is disabled from PTSD, depression, and anxiety. Unfortunately, however, the administrative law judge who heard her case made multiple errors of both law and fact in denying her application. Specifically, with respect to the credibility finding, the ALJ's discussion is facially inadequate, as it does not provide sufficient clear and convincing reasons articulated in the decision. Additionally, when it comes to the opinion of Dr. Yoon, who examined Collins, the ALJ made multiple errors. First and foremost, when it comes to the supportability factor, which the Commissioner's own regulations require the ALJ to discuss in the decision, there is no such discussion. Under the supportability factor, the ALJ is required to discuss how she considered the objective evidence cited by the medical source and any supporting explanation provided. As this Court has recognized, in the context of mental health evaluations, mental status examination results are considered objective medical evidence. And Dr. Yoon noted a number of objective abnormalities during the mental status examination, such as with respect to concentration and memory, as well as effect. Yet none of these are acknowledged anywhere in the decision in any way, shape, or form, which is a blatant violation of the controlling regulations. Additionally, there is the personality assessment inventory, the PAI, which is an important test that has internal validity indicators. Dr. Yoon cited the PAI results repeatedly in her discussion of Collins' symptoms to corroborate them. Notably, the validity indicators did not detect any overstatement of symptoms. In other words, her testing came back as valid. Under these circumstances, the ALJ was required under the regulations to explain how she considered this evidence in addition to the mental status examination results. But like those mental status examination results, you would not know from the ALJ's decision that this evidence was ever adduced. It's not mentioned anywhere in the decision. When it comes to one of the two most important factors for evaluating the medical opinion, that of supportability, the ALJ's decision just doesn't do it. Additionally, to the degree the ALJ said anything that could conceivably fall under the supportability factor category, the ALJ tried to link the provisional diagnoses that Dr. Yoon made and say that this somehow shows that she relied more on Collins' self-reports rather than the objective evidence. I have no idea how that makes any sense, and at no point has the commissioner even attempted to defend that finding. What the regulations envision is a discussion of the objective evidence that Dr. Yoon cited in support of her opinion, and that just doesn't appear in the decision. That alone is enough to require remand. ALJ provided some response to that, right? I mean, the ALJ said things like the medical records shows that Ms. Collins has linear and concrete thought process. She's alert and has normal insights. That at least appears to somewhat address some of the concerns you raise. There are some mental status examinations that are noted, but none of Dr. Yoon's mental status examination results are noted. And the regulations specify that those are the mental status examinations that need to be discussed. Whether or not any random mental status examination, any observation in the record needs to be discussed is not specified, except for those that are adduced by the medical source whose opinion is being evaluated. And that gets to probably with Dr. Lewis's assessment. I guess the ALJ found that Dr. Yoon's assessment conflicted with Dr. Lewis's assessment. Yes. If you could address that. Absolutely. So I've raised a couple of problems with that. First of all, simply saying that one opinion was inconsistent with another is logically problematic, because if you're discounting Dr. Yoon's opinion as being inconsistent with Dr. Lewis, why aren't you also discounting Dr. Lewis's opinion as being inconsistent with Dr. Yoon's? You've got to go to the underlying evidence. Just the fact that there's one doctor who said a different thing isn't really a reason to resolve. The ALJ said that Dr. Lewis's opinion was supported by the objective treatment records and mental status examination. So it wasn't just saying, you know, I'm just picking one, I'm flipping a coin. There was a reason, wasn't there? I think we have to look to that, yes. I agree. And maybe I'm splitting hairs here, but I guess I wanted to point out the fact that the opinions are different in and of itself isn't really a reason. To the degree the ALJ gives a reason, it has to be grounded in those mental status exams. However, we do discuss those mental status exam results. And this now is, I guess, moving past the legal errors and more into the factual errors, the substantial evidence issue. As discussed in our briefing, there are quite a few mental status examination results that are just not acknowledged anywhere in the decision. I think it's fair to describe this as a cherry-picking of positive results. Whenever there is, for example, say, a brief mental status examination when Collins went in for a smoking cessation appointment, as I point out, that gets cited. However, when she goes to see her mental health therapist on the exact same day and the mental health therapist notes multiple abnormalities during the mental status exam, that's not noted in the ALJ's decision. And that's an unreasonable way to lay out the evidence, to only cite the high points, particularly when a lot of those high points are from people who aren't even mental health professionals and completely disregard the regular abnormalities that are cited, particularly by the mental health professionals who see her regularly, is not a reasonable way to evaluate the evidence. So while, yes, the ALJ did address one of the two factors that she was required to address, unfortunately, substantial evidence does not support her decision when it comes to those mental status examination results. They're simply too cherry-picked. They don't reflect the record as a whole. Additionally, I think it's important to note the argument that we raised with respect to the medication adjustment. While, yes, the ALJ does say that she's preferring Dr. Lewis's opinion because of mental status examination results, the regulations do not limit this analysis to only mental status examination results. In fact, the relevant regulation on consistency specifies that the ALJ has to consider also things like consistency with non-medical sources, which tells you right there this can't be all about the objective evidence. So while it's not error to consider the objective evidence, here where we have someone who is maxed out on her medications and getting regular adjustments to those medications, there's more here than the ALJ recognized. And the consistency factor requires the ALJ to consider some of those things and not be myopic and focus solely on mental status examinations, as was done here. I would like to reserve the rest of my time for rebuttal. Thank you, Counsel. Okay, so we'll hear from the appellee. First time I'm at this podium. Good morning, Your Honors. Elizabeth Fair on behalf of Martin O'Malley, the Commissioner of Social Security. This ALJ's decision accurately reflects the record here. This is a claimant who has had lifelong anxiety symptoms, but her condition has been responsive to treatment. The ALJ cited every record in the medical record history, as well as the claimant's subjective accounts and the subjective accounts from her mother, and accurately came to the conclusion that this record shows that this claimant's condition is amenable to treatment. That doesn't mean she's not limited at all. And if you look at the RFC finding, it is particularly limiting for someone who is young, someone who has these mental conditions. The ALJ limited her to simple work, simple unskilled work, with reasoning levels 1 or 2, limited her to work that only had occasional changes in the surroundings, the tasks, limited her to work that didn't require her to engage in independent tasks, independently coming to, setting up things, put it that way, and also that she should work mostly independently, but was able to work with up to three coworkers. That RFC accurately reflects this record here. And my opponent takes issue with, I'll start with Dr. Yoon's opinion. Dr. Yoon looked at, if you read this, the claimant examined her once and didn't review any other evidence in the record. That's at 1F in the record. And if you look at it, the ALJ said Dr. Yoon didn't, she was unable to review other evidence. She didn't support, she had these provisional diagnoses. She didn't support her findings. The ALJ maybe didn't use the word support on page 23 in the record. But you can tell that she's talking about how this doctor's extreme limitations weren't supported by her findings. And my opponent says that Dr. Yoon correctly, that she did examine the claimant. But if you look at that examination, there's really nothing in that that would support these extreme marked limitations that Dr. Yoon checked on the box. For just one thing, the ALJ's opinion, the ALJ seems to suggest that Dr. Yoon only relied on subjective symptoms. It's a little bit unclear what the ALJ was saying. But wouldn't personality assessments and mental status health assessments, aren't they objective evidence? They can be. But if you look at, especially on pages 359 and 360 in that exhibit, Dr. Yoon is talking about all kinds of things, chronic conditions, things that she would have absolutely no way of being able to have objectively documented during that one examination that she conducted. And I would also, she does cite that PAI, personality assessment inventory, I think it stands for. But on page 367 in that same exhibit, you'll see that Dr., I think her last name is Mosey, she specifically says nothing in this report should be, no conclusion should be based on this report alone. So to the extent Dr. Yoon is relying on that personnel, that PAI, that document within itself is only a minuscule part of this record. It's not meant to be a be-all, end-all. And that is really the only thing that Dr. Yoon cites in support of her findings. And then, again, the ALJ found that Dr. Yoon's conclusions were inconsistent with not only Dr. Lewis, which she specifically cites in that paragraph, but also Dr. Covel, and that's two paragraphs above where the ALJ discusses Dr. Lewis. And both- I have a question about a different subject, which is the ALJ's treatment here of Colin's subjective symptoms testimony. So we require that ALJs provide specific, clear, convincing reasons for rejecting such testimony, and we also require that the ALJ link the testimony to the particular parts of the record that support the ALJ's determination. I have to say that I don't see that in this opinion. Again, on page 21 of the record, the ALJ makes a statement that Colin's statements about his symptoms are inconsistent with the objective medical evidence, and then just goes on to recite the evidence, but without, I think, linking it back to the testimony. I'm assuming you see it differently, but I'm hoping you can tell me why. Okay, a couple of things. There's two places in the record where the ALJ acknowledges the claimant's subjective allegations, on page 19 and then again on page 21. And her subjective allegations include things like she cannot organize her thoughts, she's unable to follow directions, she can't finish what she starts, she shuts down under pressure, she can't deal with people in a work setting. And then the ALJ's discussion, and it's true the ALJ does say it's not her, her subjective allegations aren't supported by the objective medical evidence. And I would just direct your attention to this court's case, Carmichael, where the court does say contradiction with the medical evidence is a sufficient basis for rejecting subjective allegations. Well, that's right, but there still has to be a linking between the record and the parts of the claimant's testimony that, you know, are undermined by the record. Yes, and I understand that. And what you have, what follows the ALJ's summary of the claimant's subjective allegations is a very accurate summary of the objective evidence, the treatment history, that discounts many of those things that the ALJ had already summarized. For instance, claimant's memory is fair to good in several reports, which is inconsistent with her claim that she can't follow instructions, that she can't complete tasks. She talks about the claimant being able to get along with people. She has a decent presentation during these treatment visits, which is inconsistent with her assertions about not being able to get along with people. And again, the ALJ acknowledges that this claimant does have some limitations. And I would also direct your attention to language in Lambert. And I know in Lambert this court found the ALJ's analysis of the subjective allegations was insufficient. But that case also says that if there is enough reasoning in the ALJ's analysis to, for the court to meaningfully determine that substantial evidence supports the ALJ's conclusions. And here, even though there might be some missing connecting words between here's what she says, here's what's in the record, these contradict each other, it's still there. There's still the juxtaposition of what her subjective allegations are with what the record actually shows. And also, I would like to point, Your Honor, to the fact that the ALJ's analysis goes through all of the records. It starts in 2019, which is right after the claimant filed her application, and it goes through 2021. And the last two exhibits in the record, B7F and B8F, show that this claimant is very capable of managing difficult situations. The last one in particular deals with how she's dealing with COVID and schooling her children during that time. It shows that she was able to secure housing through, you know, difficult circumstances. She's accumulating things for her children in the house. She's getting new beds for them. She gets a freezer at one point. There's all these things that support the ALJ's assertion that she was progressing. This record shows that she is progressing, and that is an accurate account of the record. Even if the court might want a little bit more detail in that discussion, it's accurate. And what might or might not be missing from the ALJ's discussion is evidence that actually fails to support the disability claim. Again, there is a lot of evidence in that last exhibit, B8F, that shows how functional this claimant is. There's multiple places where the treaters say her coping skills, she's progressing with her coping skills, and that her scores on the depression and anxiety inventories are improving. So overall, yes, there could have been more articulation in this ALJ's decision, but that doesn't mean it's inaccurate. That doesn't mean that this court can't meaningfully connect, you know, her reasoning with what the claimant's subjective allegations are and how they're not consistent. The record simply doesn't support that this claimant is unable to work, given her treatment history and the medical evidence in question. I'm happy to answer any further questions, but we ask that you affirm. Thank you. Thank you, counsel.  Well, with all due respect to opposing counsel, I feel like we were looking at different ALJ decisions here. I am unable to find any of this analysis that she's discussing. She references page 19 for the credibility analysis. However, as pointed out in the reply brief, page 19 has no credibility analysis whatsoever. In fact, the ALJ goes on to specifically disavow this analysis as credibility analysis, which is pointed out in the reply brief. This is a very blatant post-talk rationalization. Additionally, I have to point out that opposing counsel spent a significant amount of time talking about Exhibit 7F and 8F and how they demonstrate through Collins schooling her children through the pandemic, which she was required by law to do, that it shows abilities that support the ALJ's decision. Unfortunately, none of this is in the ALJ's decision. There is no finding whatsoever with respect to Collins' daily activities, her schooling of her children, any reference to that as a reason to either discount Dr. Yoon's opinion or to reject Collins' subjective statements. These are just very blatantly post-talk rationalizations. And as far as the accuracy of the ALJ's decision, I would like to point out that the ALJ inaccurately said that Dr. Lewis had reviewed a majority of the objective evidence, and that's why she was deferring to Dr. Lewis. Opposing counsel has never challenged the fact that that is just blatantly not true. Dr. Lewis only reviewed a small portion of the record, nowhere close to a majority. And so if you look at the ALJ's actual reasoning, it's not accurate at all. It's this reimagined decision that counsel puts forward that she is, in fact, is defending as accurate. The ALJ's decision as written is legally deficient and inaccurate. Thank you, counsel. I want to congratulate both counsel on both sides of the case for their excellent arguments. When we receive such strong and persuasive arguments, it helps us decide the case, but it can make it very difficult to decide. So I thank you both, and the social security case shall be submitted on the briefs.
judges: GOULD, LEE, THOMAS